# Walker *vs* The Trustees of Columbus.

APPEAL FROM THE HICKMAN CIRCUIT.

*Towns.    Public highways.    Legislative power.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

ELIZABETH WALKER as devisee of Robert Walker, deceased, brought this action in case, against the Trustees of the town of Columbus, for injuriously and wrongfully obstructing her in her ferry privileges, and keeping her out of the tolls of the same, from the town of Columbus across the Mississippi river.   The Trustees pleaded their right to the franchise and the tolls, and set forth in their plea, the facts upon which they base their right.   This plea was demurred to by the plaintiff, and her demurrer overruled, and refusing to reply further, judgment was rendered against her, and she has appealed to this Court.

It appears that Croghan, Underwood and others, under acts of the Legislature of Kentucky, (2 *Stat. Law,* 1044–46,) laid off the town of Columbus into lots, streets, alleys and public ground, and made and recorded a plan therefor, by which they left an open space of ten poles as a common, along the margin of the river, between low water mark and the lots next to the river; that this common was dedicated to public use, and was appropriated and used as such, from the time the town was laid off and established; that in 1825, (*Acts of Assembly of that year,* 71,) the Legislature, after authorizing the Trustees to sell the whole of the in and out lots in said town, enacted the following provision: "That the Trustees of said town, or a majority of them, may fix the rates of ferriage across the Mississippi river, and they may also lease out ferries, for any term of years not exceeding five, and apply the rents to the improvement of the town."   By a subsequent act passed 1829, (*Acts of Assembly of that year,* 31,) it was provided "that a public ferry be, and the same is hereby established at the warehouse landing of Owen G. Cates and Robert Walker, fronting their lot,

CASE.

*Case 50.*

October 27.
Case stated.

WALKER
vs
TRUSTEES OF CO-
LUMBUS.

No. 3, in the town of Columbus, across the Mississippi river, to the opposite shore, and that said ferry be in the name and for the benefit of said Cates and Walker, their heirs and assigns forever: *Provided however*, That said Cates and Walker enter into bond in the County Court of Hickman, in the penalty of one thousand dollars, conditioned for the faithful performance of the duties required of other ferry keepers, by law in this Commonwealth."

At the next session of the Legislature, (*Session acts of the year* 1830–31, 149,) the last statute was repealed and the former one was re-enacted and restored, and it was further enacted, "that all the ferry rights and privileges, from the public ground on the margin of the Mississippi river, at the town of Columbus, across the said river to the opposite shore, are hereby *re-granted and confirmed* to the Trustees of said town, and their successors in office, for the use and benefit of the inhabitants thereof; and said Trustees are hereby vested with power and authority to lease one or more ferries from said public ground, from time to time, not exceeding five years at any one time."

Lot No. 3, owned by Cates and Walker, lay fronting the open space or common, which lay between and separated their lot from the river. Mrs. Walker claims the ferry franchise by virtue of the act of 1829, and as devisee of Walker, the grantee under that act, to whom Cates had sold and transferred his joint interest. The Trustees claim by virtue of the acts of 1825 and 1830–31, above cited, and as fee simple legal holders of the common, which lies along the margin of the river. The former insists that the act of 1830–31, repealing the act which vested the franchise in Cates and Walker, and vesting it in the Trustees, was unconstitutional and void, as divesting them of a valuable right, which had been before granted to them, and that the Trustees had no vested right to the ferry before.

That the legal title to the common or ground, to the margin of the river, was in the Trustees, there can be no doubt: *Trustees of Augusta* vs *Perkins*, (3 B. Monroe, 440; *Trustees of Falmouth* vs *Horter*, (4 Littell, 119;) *Trustees of Maysville* vs *Boon*, (2 J. J. Marshall, 225.) If it be conceded that, as the legal holders of the soil,

The margin of the river on which the town of Columbus was laid out being reserved as a public common or highway for the bene-

they are not legally entitled to the ferry privileges, as incidental to the ownership of the soil, but that the government may grant it to others for the public good, and without compensation first made, yet as there is seeming justice and propriety in granting the franchise to the owners of the soil, and injustice in granting it to others, unless imperious public good requires it, a liberal interpretation should be given to the acts which import a grant to those who are in justice and propriety entitled, and a strict construction to those which attempt to divest them of it. Adopting this rule of interpretation, the statute of 1825 may be construed as vesting at least the beneficial interest in the franchise, in the Trustees *absolutely*, and not barely for a term of years. We do not understand the act as giving to the Trustees the authority merely to lease the ferry for a *single term* of five years, and apply the rents to the improvement of the town, but as giving to them the indefinite and unlimited power to lease and apply the proceeds as directed, limiting them only as fiduciaries, out of abundant caution, and with an eye to the future increase of the town, to the term of five years, as the ultimatum of the time for which they may lease, at any one time. The statute clearly recognizes and sanctions an *existing right* in the Trustees, and prescribes and directs the manner in which the Trustees may exercise that right and apply the profits. This recognition and sanction of their right and unlimited appropriation of the profits or usufructuary interest, to and for the benefit of the town, is tantamount to, and in effect, a direct grant. And if the Legislature had not the constitutional power, by the act of 1830–31, to divest Cates and Walker of a vested right, claimed under the act of 1829, neither had they the power, by the act of 1829, to divest the Trustees and the town of their right, recognized as vested and the usufructuary interest, certainly granted by the act of 1825, and perpetually granted, according to our interpretation of the act. The beneficial interest in the town, if that alone was granted, is as much protected by the constitution, and can no more be divested than the naked fee. The act of 1830–31 not only repeals the act of 1829, which they had the right and power to do, whether

WALKER
*vs*
TRUSTEES OF COLUMBUS.

fit of holders of lots on the river and in the town, any exclusive right to the use thereof did not pass by Legislative grant to an individual, but remained in the Trustees of the town for the purposes of its original dedication.

the same was unconstitutionally or surreptitiously obtain-ed: but it is a *declaratory* annunciation of the Legisla-ture, intended as an interpretation of the act of 1825, which accords with the interpretation which we have given to it.

The judgment of Circuit Court is, therefore, affirmed with costs.

*Wickliffe, Owsley & Goodloe* for appellant: *Cates & Lindsey* for appellees.